IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RENEE CATCHINGS, | ) |
| PLAINTIFF, | ) CIVIL ACTION NO. _____ |
| vs. | ) |
| | ) HON. |
| HAZEL PARK SCHOOL DISTRICT, | ) |
| DEFENDANT. | ) |

## COMPLAINT

PLAINTIFF, RENEE CATCHINGS, by and through her attorneys, CARLA D. AIKENS, P.L.C., submit the following Complaint against DEFENDANT HAZEL PARK SCHOOL DISTRICT ("Hazel Park").

## JURY DEMAND

COMES NOW PLAINTFF, RENEE CATCHINGS, and hereby makes her demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Renee Catchings was a resident of Oakland County in the State of Michigan.

2. Defendant Hazel Park School District is a Municipal Corporation with a principal place of business in Wayne County at 1640 east Elza Street, Hazel Park, MI 48030.

3. This action is brought in this Court on the basis of federal question jurisdiction, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC 2000e et seq.

4. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## VENUE

5. Venue is proper in the Eastern District of Michigan pursuant to Section 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment discrimination giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

6. Plaintiff was hired by Defendant as a Special Education Teacher on January 10, 2010.

7. Plaintiff's plant manager, Joe Clement started to move Plaintiff to various departments.

8. Other employees would make comments about Plaintiff's age; stating he was too old and too slow.

9. Plaintiff was transferred from the woodshop to painting. Plaintiff was replaced by Dennis Dahal, who is at least 15 years Plaintiff's junior.

10. Plaintiff continually worked for the Defendant from January 2010 through May 2020 when she requested FMLA leave.

11. Plaintiff's request for FMLA leave, despite over a decade of work for Defendant, was denied due to an alleged hour shortage.

12. Amy Kruppe denied Plaintiff's valid request for FMLA leave because Plaintiff allegedly had not met the minimum hour requirement for said leave.

13. Upon information and belief, Plaintiff met the minimum hour requirement to use FMLA leave and was improperly denied that leave.

14. Upon information and belief, Plaintiff required the use of her FMLA leave for an appropriate reason; Plaintiff was pregnant.

15. Further, Plaintiff was in need of accommodation, which Defendant refused to give.

16. Nancy Sly, the Union President, met with Amy Kruppe on behalf of the Plaintiff to discuss the need for her accommodation.

17. Other teachers were allowed to "work the board" instead of being forced to remain off in a similar situation to Plaintiff.

18. Upon information and belief, Plaintiff was entitled to FMLA leave.

19. Defendant, by and through their employees, violated Plaintiff's rights and interfered with or otherwise retaliated against the Plaintiff for attempting to use her available leave.

### COUNT I
### DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990 42 U.S.C. § 12101, et seq. ("ADA")

20. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

21. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA.

22. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

23. Plaintiff had coronary artery disease and had a massive heart attack; as a result, Plaintiff has a disability within the meaning of the ADA.

24. Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

25. Section 12112(a) of the ADA, makes it illegal to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

26. Plaintiff was discriminated against on the basis of her disability when Defendant refused to allow her to return to work without any explanation.

27. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

28. But for Defendant's illegal discrimination, Plaintiff would not have been damaged nor discharged.

29. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

30. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

31. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

**DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITY ACT, MCL 37.1201, et seq. ("PWDCRA")**

32. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

33. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

34. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

35. Plaintiff has a disability within the meaning of the PWDCRA.

36. Plaintiff's disability is qualified, meaning that, with reasonable accommodation, she can perform the essential functions and duties of his job.

37. MCL 37.1202(b) makes it illegal to, "[d]ischarge or otherwise discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment, because of a disability … that is unrelated to the individual's ability to perform the duties of a particular job or position."

38. Plaintiff was discriminated against on the basis of her disability when Defendant refused to reinstate her to work because of his disability.

39. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

40. But for Defendant's illegal discrimination Plaintiff would not have been damaged.

41. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT III

### INTERFERENCE AND RETALIATION IN VIOLATION OF THE ADA

42. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

43. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the ADA, 42 U.S.C. § 12101, et seq.

44. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

45. Plaintiff had coronary artery disease and had a massive heart attack; as a result, Plaintiff has a disability within the meaning of the ADA.

46. Plaintiff's disabilities under the ADA are qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

47. Section 12203(a) of the ADA makes it illegal for anyone to, "discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."

48. Plaintiff faced retaliation when he was not allowed to return to work after medical leave, Defendant's unwillingness to reinstate him to work because of his attempts to take time off related to his disability.

49. Moreover, Section 12203(b) of the ADA makes it, "…unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed…"

50. Defendants interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when Defendant refused to discuss or consider any employment for Plaintiff, and, then stopped and cancel his disability.

51. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

52. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor discharged.

53. As a direct and direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

54. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

55. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### INTERFERENCE AND RETALIATION IN VIOLATION OF THE PWDCRA

56. Plaintiff incorporates by reference the allegations set forth above as if alleged herein.

57. At all material times, Plaintiff was an employee, and Defendant was Plaintiff's employer, covered by and within the meaning of the PWDCRA.

58. A respondeat superior relationship existed because agents of Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

59. Plaintiff has a disability within the meaning of the PWDCRA.

60. Plaintiff's disability is qualified, meaning that, with reasonable accommodation, he can perform the essential functions and duties of his job.

61. MCL 37.1602(a) makes it illegal to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act."

62. Plaintiff faced retaliation when he was not allowed to return to work after medical leave, Defendant's unwillingness to reinstate her to work because of her attempts to take time off related to her disability.

63. Moreover, MCL 37.1602(f) makes it illegal to, [c]oerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of… any right granted or protected by article 5."

64. Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when Defendant refused to discuss or consider any employment for Plaintiff, and, then stopped paying him completely because of the time he took off for his disability.

65. Defendant's unlawful employment practices were done intentionally, with malice, or with reckless indifference to Plaintiff's rights.

66. But for Defendant's illegal discrimination Plaintiff would not have been damaged nor constructively discharged.

67. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

68. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

69. Plaintiff requests relief as described in the Prayer for Relief below

## COUNT V
## VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE AND RETALIATION

70. Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

71. At all relevant times, Plaintiff was Defendant's employee within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

72. At all relevant times, Defendant Beaumont Hospital was an employer within the meaning of the FMLA, 29 U.S.C. § 2601, *et seq.*

73. Plaintiff fell within the protection of the FMLA as a person with a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

74. At all relevant times, Plaintiff suffered from was pregnant and/or had other medical conditions that required the use of her accrued leave.

75. Under the FMLA, Defendant had an obligation to provide Plaintiff with up to 12 weeks of leave for a serious health condition which rendered Plaintiff unable to perform the functions of her position.

76. In addition, Defendant is prohibited under FMLA from retaliating against Plaintiff for requesting and/or taking FMLA leave.

77. As a direct and proximate result of Defendant' violation of FMLA and retaliation, Ms. Catchings has suffered and will continue to suffer lost wages, and other economic advantages of employment.

78. As a direct and proximate result of Defendant's violation of FMLA and retaliation, Ms. Catchings has suffered and will continue to suffer physical pain and suffering, including but not limited to headaches, tightness in her neck, stomach aches, elevated blood pressure, and insomnia.

79. As a direct and proximate result of Defendant's violation of FMLA and retaliation, Ms. Catchings has suffered and will continue to suffer mental/emotional pain and suffering, including but not limited to loss of enjoyment of a normal life due to irritability, depression, anxiety, worry, humiliation, grief, sadness, anger, and panic attacks.

80. As a direct and proximate result of Defendant's violation of FMLA and retaliation, Ms. Catchings required medical care.

## RELIEF REQUESTED

PLAINTIFF, RENEE CATCHINGS, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1. Compensatory damages in whatever amount to which Plaintiff is entitled;
2. Exemplary damages in whatever amount which Plaintiff is entitled;
3. An award of lost wages and the value of fringe benefits, past and future;
4. An award of interest, costs, and reasonable attorney fees; and

5. An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated: June 1, 2023

Respectfully Submitted,

/s/ Carla D. Aikens
Austen Shearouse (P84852)
Carla D. Aikens (P69530)
CARLA D. AIKENS, P.C.
*Attorneys for Plaintiff*
615 Griswold Ste. 709
Detroit, MI 48226
carla@aikenslawfirm.com