# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

RENEE CATCHINGS,

                Plaintiff,                Case No. 2:23-cv-11313

v.                                          Hon. Brandy R. McMillion
                                              United States District Judge

HAZEL PARK SCHOOL
DISTRICT,

                Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 29)

Plaintiff Renee Catchings ("Catchings") brought this discrimination action against Defendant Hazel Park School District ("Hazel Park") under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, *et seq.*, and the Michigan Persons with Disabilities Act ("PWDCRA"), MICH. COMP. LAWS. § 37.1602(a), (f).[1]  *See generally* ECF No. 12.  Hazel Park now moves for summary judgement on all claims pursuant to Federal Rule of Civil Procedure 56.  ECF No. 29.  The Motion has been adequately briefed so the Court will rule without a hearing.  *See* ECF Nos. 31, 33; E.D. Mich. L.R. 7.1(f)(2).  For the reasons stated below, the Court **GRANTS IN**

---

[1] Catchings also alleged a count for Interference and Retaliation under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*.  *See* ECF No. 12, PageID.59-64.  However, in response to this Motion, Catchings voluntarily dismissed those claims.  *See* ECF No. 31, PageID.288.

1

**PART** and **DENIES IN PART** Hazel Park's Motion for Summary Judgment (ECF No. 29).

## I.

In 2010, Catchings was hired as a special education teacher for Hazel Park Schools. ECF No.12, PageID.51. From the beginning of the 2021 school year to September 9, 2022, she served as the Transition Coordinator for Edison School. *See* ECF No. 29, PageID.142-143; ECF No. 29-2, PageID.185. In that role, Catchings was tasked with developing the adult transition program, which helped young adults gain necessary life skills. *See id.* at PageID.208-209.

On September 20, 2021, Catchings was involved in an incident where she was punched in the head by a student. *See* ECF No. 29-4, PageID.213. She was off work for a week and returned on September 27, 2021. ECF No. 29, PageID.143. On October 27, 2021, a second incident occurred which also resulted in Catchings being punched in the head and sustaining the same head injuries. *Id.* Following that incident, Catchings did not return to work due to the repeated head trauma. *See* ECF No. 29-2, PageID.186. Catchings' physician diagnosed her with post-concussion syndrome, and she was placed on administrative leave. *Id.*

In March 2022, Catchings' physician released her to return to work with a note that documented the following restrictions: limited activity requiring frequent changes in position or strenuous activities, limited screen time, use of a blue-light

filter on computer screens, and frequent 15-to-30-minute breaks. ECF No. 31, PageID.268. Catchings provided the Superintendent, Dr. Amy Kruppe ("Dr. Kruppe"), with a copy of the doctor's note. ECF No. 29, PageID.144. Upon receipt, Dr. Kruppe consulted with Dr. Michelle Krause ("Dr. Krause"), principal of Edison School, to determine if the requested accommodations could be provided. *See* ECF No. 29, PageID.144. At the time, Hazel Park did not have an HR professional to handle accommodation requests; so those decisions were left up to Dr. Kruppe as superintendent. *See* ECF No. 29-8, PageID.224-226. Because giving Catchings frequent breaks would not be "safe for kids in the role of transition coordinator," Dr. Kruppe denied her requested accommodation. *See* ECF No. 29-8, PageID.226. Despite only addressing the request for frequent breaks, Catchings did not follow up on her other accommodation requests. *See* ECF No. 29, PageID.145; ECF No. 31, PageID.270.

In May 2022, Catchings was notified that she would remain as the Transition Coordinator for the 2022-2023 school year. ECF No. 29, PageID.146. On May 20, 2022, Catchings received an updated doctor's note which included the following restrictions: (1) limit activities requiring frequent changes in position, (2) no lifting over 10-15 lbs., (3) limit bending or twisting, and (4) limited screen-time throughout the day. ECF No. 29-11, PageID.241. The note expressly stated, "[t]he use of computer glare screens and blue glass filter would be helpful" but notably did not

include the request for frequent breaks. *Compare id.* with ECF No. 29-7, PageID.219. Catchings then returned to work on June 1, 2022, and continued to work through the remainder of the school year. *See* ECF No. 29, PageID.147.

On August 29, 2022, Catchings submitted her voluntary notice of resignation, effective September 9, 2022. She resigned because she accepted a job with Berkley Schools. *See id.* After submitting the letter, Catchings continued to work without accommodations until the effective date of her resignation, when she began working at Berkley Schools.

Catchings filed this action on June 1, 2023, alleging claims of disability discrimination, interference and retaliation under the ADA and PWDCRA, as well as claims for interference and retaliation under the FMLA. This case was originally assigned to the Honorable Shalina D. Kumar, who granted leave for Catchings to amend the complaint to correct deficiencies. ECF No. 11. The Amended Complaint was filed and answered. *See* ECF Nos. 12, 13.[2] The case was then reassigned to the undersigned. *Administrative Order* 24-AO-007. This Motion followed and was

---

[2] The Court notes that despite the opportunity to correct deficiencies, the Amended Complaint contained many of the same typographical errors, and references to facts that are not germane to this case. *See e.g.,* ECF No. 12, PageID.51-52 ("Plaintiff's plant manager, Joe Clement started to move Plaintiff to various departments. Other employees would make comments about Plaintiff's age; stating he was too old and too slow. Plaintiff was transferred from the woodshop to painting. Plaintiff was replaced by Dennis Dahal, who is at least 15 years Plaintiff's junior."); ECF No. 12, PageID.52 ("Upon information and belief, Plaintiff required the use of her FMLA leave for an appropriate reason; Plaintiff was pregnant."); ECF No. 12, PageID.53 ("Plaintiff had coronary artery disease and had a massive heart attack; as a result, Plaintiff has a disability within the meaning of the ADA.").

4

fully briefed. *See* ECF Nos. 29, 31, 33. Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it. *See* E.D. Mich. L.R. 7.1(f).

## II.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Once that showing has been made, the nonmoving party must present "significant probative evidence" revealing that there is "more than some metaphysical doubt as to the material facts necessitating a trial[.]" *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir. 2023). The "facts must be viewed in the light most favorable to the nonmoving party *only if* there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (emphasis added). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The non-moving party may not rely on his pleadings alone but instead must demonstrate the existence of a genuine issue for trial by pointing to 'specific facts' that create such an issue." *Hamilton v. Myers*, 281 F.3d 520, 525 (6th Cir. 2002) (citation omitted). "A mere scintilla of evidence" is insufficient to forestall summary

5

judgment." *Babcock & Wilcox Co. v. Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017). Conclusory assertions, supported only by plaintiff's own opinions, do not create a genuine issue of material fact that can withstand a motion for summary judgment. *Arendale v. City of Memphis*, 519 F.3d 587, 608 (6th Cir. 2008); *see also Johari v. Big Easy Rest., Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

## III.

### A.  DISABILITY DISCRIMINATION UNDER THE ADA (COUNT I) AND THE PWDCRA (COUNT II)

Catchings alleges Hazel Park engaged in disability discrimination under the ADA and PWDCRA when it failed to accommodate her reasonable accommodation request.[3] *See* ECF No. 12, PageID.53-55. The ADA bars employers from discriminating against a qualified individual on the basis of a disability in " … the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a); *Woodling v. Geobuild, LLC*, No. 22-3499, 2023 WL 335283, at *3 (6th Cir. Jan. 20, 2023). Generally, to establish a *prima facie* case of discrimination under the ADA a plaintiff must show that (1) she is disabled, (2) she is otherwise qualified to perform the essential function of a position, with or without accommodation, and (3) she suffered an adverse employment action because of her disability. *See Demyanovich v. Cadon*

---

[3] The PWDCRA "substantially mirrors the ADA, and resolution of a plaintiff's ADA claim will generally . . . resolve the plaintiff's PWDCRA claim." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763-64 (6th Cir. 2012). Thus, the Court analysis will apply to Catchings' discrimination claims under both the ADA and PWDCRA.

6

*Planting & Coatings, LLC*, 747 F.3d 419, 433 (6th Cir. 2014). However, when disability discrimination is based upon a failure to accommodate, the Court looks to a direct evidence framework in evaluating the claim. *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007); *see also Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416-17 (6th Cir. 2020)).[4]

Under the direct evidence framework, Catchings bears the initial burden of establishing (1) that she is disabled, and (2) she is "otherwise qualified for the position despite her disability." *Kleiber*, 485 F.3d at 869 (quotation and citation omitted). The burden then shifts to Hazel Park to "prov[e] that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon" the school. *Id.*

Hazel Park argues that Catchings is not disabled and therefore they are entitled to summary judgment on that alone. ECF No. 29, PageID.164-165. Under the ADA, a disability is (a) a physical or mental impairment that substantially limits one or more major life activities; (b) a record of such an impairment; or (c) being regarded

---

[4] Catchings asserts that Hazel Park applied the wrong standard in arguing for summary judgment on the ADA disability claim; and that under the proper framework for a failure to accommodate claim, the Court need not address the requirement of an adverse employment action. *See* ECF No. 31, PageID.281, 285. While true, Hazel Park notes that Catchings Amended Complaint does not allege a failure to accommodate claim (*see* ECF No. 12, PageID.53-54) and the Court agrees. However, for completeness, the Court will address the failure to accommodate claim and the arguments asserted by the parties.

as having such an impairment. *See* 42 U.S.C. § 12102(1). Catchings alleges that she is disabled for two reasons. First, she argues that the discussion related to her accommodations between Dr. Krause and Dr. Kruppe shows that she was "regarded as" disabled. ECF No. 31, PageID.283. Second, Catchings argues that her "physical impairment affect[s] . . . her everyday life as the limitations of screen time, light load lifting, and frequent breaks would easily affect someone's everyday life." *See id.* Hazel Park, on the other hand, asserts that Catchings is not disabled because she has not identified a "major life activity" that is now substantially limited relating to her job duties. *See* ECF No. 29, PageID.165; ECF No. 33, PageID.344.

Generally, the "regarded-as-disabled" prong of the ADA protects employees who are perfectly able to perform a job, but are rejected from doing so because of the myths, fears and stereotypes associated with disabilities. *See Ferrari v. Ford Motor Co.*, 826 F.3d 885, 892 (6th Cir. 2016) *abrogated by Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308 (6th Cir. 2019) (citing *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)).

> Individuals may be regarded as disabled when (1) [an employer] mistakenly believes that [an employee] has a physical impairment that substantially limits one or more major life activities, or (2) [an employer] mistakenly believes that an actual, nonlimiting impairment substantially limits one or more [of an employee's] major life activities."

*Id.* at 893.

Here, the conversation between Dr. Krause and Dr. Kruppe does not meet the definition of "regarded as disabled." That they were discussing Catchings' accommodation request, in no way shows that there were any mistaken beliefs, misinterpretations or misconceptions about her physical impairment. *Ferrari*, 826 F.3d at 893.

Nonetheless, the Court finds that Catchings' "post-concussion syndrome" does affect major life activities, as defined under the ADA. *See* 29 C.F.R. § 1630.2(i) (listing major life activities to include "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, **lifting**, bending, speaking, breathing, learning, **reading**, concentrating, thinking, communicating, **interacting with others**, and **working**") (emphasis added). A substantial head injury would affect most if not all the defined life activities; and Catchings disability is further evidenced by the restrictions placed on her – limit to screen time, light load lifting, and frequent breaks – all of which show that life activities (such as lifting, reading, interacting with others and working) have been effected by her post-concussion syndrome. *See* ECF No. 31, PageID.283; *see also Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 360 (6th Cir. 2007) (ADA disability discrimination case involving a teacher whose disabling condition,

9

recurrent headaches and difficulty with attention and concentration, were similar to symptoms of post-concussion syndrome).[5]

In its Reply Brief, Hazel Park argues that Catchings also fails to show that she was "qualified for her position." ECF No. 33, PageID.345[6]. Hazel Park argues that because Catchings returned to work after the 15-to-30 min break accommodation was removed from her doctor's note, there was no way she could have done her job before her return. *Id.* However, the Court finds that argument to be somewhat circular. Was it that she had the doctor's note revised so that she could return to work; or was it that she returned to work because the doctor's note was revised. *See* ECF No. 29-2, PageID.200. But that coupled with the fact that Hazel Park offered Catchings to return to the district for the 2022-2023 school year, in the same position with more money, could lead a reasonable jury to find that she was in fact qualified for her position, without or without the accommodation. *See* ECF No. 29-10, PageID.239. Thus, the Court finds that there is a material dispute on whether

---

[5] The Court notes that Hazel Park relies on *Weisberg v. Riverside Twp. Bd. of Educ.*, 180 F. App'x 357, 359 (3d Cir. 2006) for the proposition that post-concussive syndrome, specifically, is not a disability. ECF No. 29, PageID.164. But that case is not binding on this Court, and the Court finds that Catchings condition affects major life activities.

[6] Normally the Court would not consider arguments raised for the first time in a reply brief and would deem them waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010). However, because the legal framework was incorrect in the opening brief, Hazel Park's first opportunity to address this was in the reply. And for the sake of completeness, the Court is analyzing the claims under the correct legal framework.

10

Catchings was qualified for her job, and that means that a jury is best suited to determine if Catchings is "disabled" under the ADA.

However, assuming for the sake of argument that Catchings is disabled, the burden then shifts to Hazel Park to prove that the proposed accommodations eliminated an essential job function or presented an undue hardship. *Kleiber*, 485 F.3d at 869. Hazel Park argues that Catchings' request for frequent 15-to-30 minute breaks would impose an undue hardship because she worked with a student population that had "emotional impairments and behavioral issues" and allowing frequent breaks would "put[] student safety at risk if [Catchings] were provided" the accommodation. ECF No. 33, PageID.346. However, Catchings counters Hazel Park's position. She argues that she did not have to be the only person solely in charge of these students, and that because there was other staff that could assist in supervision, the students would not be in any form of danger. *See* ECF No. 31, PageID.285-287; *see also* ECF No. 29, PageID.143. Hazel Park does not refute this point, which is enough to create a genuine issue of material fact on Catchings' ADA failure to accommodate claim. Whether other staff could have cared for the students and ensured their safety during Catchings' requested 15-to-30-minute breaks is an issue best left for the jury to resolve.

Consequently, summary judgment on Catchings' failure to accommodate-disability discrimination claims under the ADA and the PWDCRA (Counts I and II) is denied.

## B.  INTERFERENCE UNDER THE ADA (COUNT III)

Hazel Park also seeks summary judgment on Catchings' ADA interference claim. The ADA provides that "it shall be unlawful to … interfere with any individual in the exercise or enjoyment of … any right granted or protected by this chapter." 42 U.S.C. § 12203(b). Hazel Park challenges Count III on similar grounds as it does the disability discrimination claim — frequent breaks could not be accommodated because of the safety concerns it would create with adult special education students. *See* ECF No. 33, PageID.347. Similarly, the Court finds a genuine issue of material fact exists on Catchings' interference claim.

While the Sixth Circuit has not expressly stated elements to evaluate an ADA interference claim, the Circuit has adopted the Seventh Circuit's test for ADA interference. *See Kelly v. Graphic Packaging Int'l, LLC*, No. 24-1400/1599, 2025 WL 573766, at *4 (6th Cir. Feb. 21, 2025). Under that test, a plaintiff must prove (1) she engaged in activity statutorily protected by the ADA; (2) she was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of her protected activity; and (4) the defendants were motivated by an intent to

discriminate. *See Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017).

Some courts have treated § 12203(b) as essentially a second anti-retaliation provision, though perhaps a broader one. *Post v. Trinity Health-Michigan*, No. 2:18-cv-13773, 2021 WL 3269058, at *4 (E.D. Mich. July 30, 2021), *aff'd sub nom.*, 44 F.4th 572 (6th Cir. 2022) (citation omitted). Other courts in this Circuit have distinguished interference allegations from retaliation claims under the ADA by identifying a requirement of "discriminatory animus," focused on the fourth element. *See, e.g.*, *Hazen v. Cleveland Clinic Found.*, No. 1:21-cv-01965, 2022 WL 3083027, at *10 (N.D. Ohio July 29, 2022) (citing *Youngblood v. Prudential Ins. Co.*, 706 F. Supp. 2d 831, 840 (M.D. Tenn. 2010)) ("Any interference 'must have been taken because of plaintiff's alleged disability. . .'").

Rather than address this legal framework, both parties go back to the issue of student safety if Catchings had been provided with frequent 15-to-30-minute breaks. *See* ECF No. 29, PageID.167-168; ECF No. 31, PageID.286-287; ECF No. 33, PageID.346-347. And the arguments (or lack thereof) both fail to address the essential elements of the claim. The Court is not required to scour the record to develop the argument of either party. *See Browder v. Ankrom*, 473 F. App'x 499, 500 (6th Cir. 2012). The Court has already established that a genuine issue of material fact exists as it relates to the issue of student safety and the requested

13

accommodation for frequent breaks. And for that same reason, the Court is going to deny summary judgment on the ADA interference claim – and leave to the jury to determine whether Hazel Park interfered with Catchings in the exercise or enjoyment of any right granted under the ADA.

Therefore, to the extent that Count III alleges an interference claim under the ADA, summary judgment is denied.

## C.     RETALIATION UNDER THE ADA (COUNT III)

Hazel Park also seeks summary judgment on Catchings' ADA retaliation claim. *See* ECF No. 29, PageID.169; *see also* ECF No. 12, PageID.56. To establish a *prima facie* case of retaliation under the ADA, the plaintiff must show that (1) she engaged in activity protected by the ADA; (2) the defendant knew of this exercise of plaintiff's protected rights; (3) the defendant subsequently took an employment action adverse to plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the protected activity and the adverse employment action. *Hughes v. Henry Ford Health Sys.*, No. 2:17-cv-10436, 2018 WL 3956362, at *6 (E.D. Mich. Aug. 17, 2018) (citing *Hurtt v. Int'l Servs., Inc.*, 627 F. App'x 414, 422 (6th Cir. 2015)).

Hazel Park argues that Catchings' claims fail as a matter of law because she has not provided any evidence of an adverse employment action or a causal connection between the adverse employment action and her protected activity. ECF

14

No. 29, PageID.169.  The Court agrees.  An adverse employment action is "a materially adverse change in the terms and condition of a plaintiff's employment." *See Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).  Materially adverse employment actions include "a termination of employment, demotion evidence by a decrease in wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000).

Failure to identify an adverse employment action is fatal to Catchings' claim. As Hazel Park argues, Catchings was placed on unpaid medical leave when her breaks could not be accommodated.  *See* ECF No. 29, PageID.170 (citing ECF No 29-3, PageID.207).  However, that alone does not qualify as an adverse employment action.  *See Squiers v. Washtenaw Cnty.*, No. 2:21-cv-11956, 2023 WL 3506422, at *4 (E.D. Mich. May 17, 2013).  And after returning from leave, Catchings voluntarily resigned from her position.  ECF No. 29, PageID.147; ECF No. 31, PageID.274.  Voluntary resignations also do not qualify as adverse employment actions. *See Hammon v. DHL Airways Inc.*, 165 F.3d 441, 447 (6th Cir. 1999).  Thus, because Catchings cannot point to an adverse employment action, her retaliation claim under the ADA fails as a matter of law and summary judgement is appropriate.

15

## C.     CLAIMS UNDER THE PWDCRA (COUNT IV)

Hazel Park argues that Catchings interference and retaliation claims under the PWDCRA both fail as a matter of law and should be dismissed, for reasons unrelated to the claims under the ADA.  *See* ECF No. 29, PageID.172-173.  Catchings does not address these arguments, and instead simply states that her PWDCRA claims mirror her ADA claims, and therefore she was not going to reargue them but reassert them in response to Hazel Park's request for summary judgment on the PWDCRA claims.  *See* ECF No. 31, PageID.288.  While true the two statutes mirror each other, there are some differences that can affect evaluation of the claims.  And failure to respond to an argument, deems opposition to that argument waived.  *Murray v. Geithner*, 763 F. Supp. 2d 860, 871-72 (E.D. Mich. 2011) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived." (citing *Humphrey v. U.S. Atty. General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008))).

Here, separate from the arguments raised under the ADA, Hazel Park is correct in its assertion that there is no independent cause of action for interference under the PWDCRA.  *See generally* MICH. COMP. LAWS § 37.1602.  Therefore, summary judgment is proper on Count IV's interference claim as a matter of law.

The PWDCRA does however allow for retaliation claims and protects individuals who are engaged in protected activity. This includes opposing a practice that is unlawful under the PWDCRA or filing a complaint, testifying, assisting or participating in an investigation or proceeding relating to unlawful activity under the act. MICH. COMP. LAWS § 37.1602(a). To establish a claim of retaliation, the plaintiff must show that (1) she engaged in a protected activity, (2) which was known to the defendant, (3) she suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse action. *DeFlaviis v. Lord & Taylor, Inc.*, 566 N.W.2d 661, 663 (1997). Hazel Park aptly points out that Catchings has not alleged that "she opposed a violation of the PWDCRA, filed a complaint or participated in any investigation, proceeding or hearing under the statute." ECF No. 29, PageID.173 (citing ECF No. 12, PageID.58-59, ¶¶ 57-69). The Court agrees.

Catchings' Complaint for this claim is confusing, at best. She fails to identify the protected activity that she engaged in, the adverse employment action, or the causal connection between the two. The Complaint states as follows:

> 61. MCL 37.1602(a) makes it illegal to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act."
>
> 62. Plaintiff faced retaliation when he was not allowed to return to work after medical leave, Defendant's unwillingness to reinstate her to work because of her attempts to take time off related to her disability.

17

> 63. Moreover, MCL 37.1602(f) makes it illegal to, [c]oerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of… any right granted or protected by article 5."
>
> 64. Defendant interfered with Plaintiff's ability to exercise rights under the ADA and the enjoyment of those rights when Defendant refused to discuss or consider any employment for Plaintiff, and, then stopped paying him completely because of the time he took off for his disability.

*See* ECF No. 12, PageID.58-59.

Despite the opportunity to correct the Complaint, *see* ECF No. 11, it still contains references to "he/him/his" and actions relating to taking time off, which are not at issue in this case. And the record is developed no further; on top of Catchings' catch all response to Hazel Park's arguments by referencing her response to the ADA claims. *See* ECF No. 31, PageID.288. Consequently, without evidence to establish each essential element, the claim must be dismissed as a matter of law. *See O'Neal v. Remus*, No. 2:09-cv-14661, 2010 WL 1463011, at *4 (E.D. Mich. Mar. 17, 2010) (citation omitted).

Therefore, summary judgment is granted on the PWDCRA interference and retaliation claims (Count IV) and that count is dismissed in its entirety.

### IV.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Hazel Park's Motion for Summary Judgment (ECF No. 29). Because Catchings establishes a genuine issue of material fact on Count I and II's failure to accommodate claims under the ADA and PWDCRA and Count III's interference claim, summary

judgment is **DENIED**. To the extent that Count III alleges a claim for retaliation under the ADA, summary judgment is **GRANTED**. Summary judgment is also **GRANTED** as to Counts IV's interference and retaliation claims under the PWDCRA.

Therefore, **IT IS HEREBY ORDERED** Count III's retaliation claim and Count IV's interference and retaliation claims in Plaintiff's Amended Complaint (ECF No.12) are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that all remaining claims will proceed in this litigation – Count I (Disability Discrimination for Failure to Accommodate under the ADA), Count II (Disability Discrimination for Failure to Accommodate under the PWDCRA), and Count III (Interference in violation of the ADA).

**IT IS SO ORDERED.**

Dated: September 12, 2025  
       Detroit, Michigan

s/Brandy R. McMillion  
HON. BRANDY R. MCMILLION  
United States District Judge